O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

| | |
|---|---|
| **DYAN BILLAL,**<br>    **Plaintiff,**<br><br>    **vs.**<br><br>**ALERE HEALTH, LLC, et al.,**<br>    **Defendants.** | **Case No.: SA CV 14-0390-DOC (DFMx)**<br><br><br>**ORDER DENYING MOTION FOR SUMMARY JUDGMENT [33]** |

   Before the Court is the Motion for Summary Judgment filed by Defendant Alere Health, LLC (Dkt. 33).

## I.      BACKGROUND

### A. Factual Background

#### 1.      Billal Works for Alere, Leaves for Another Job, and Returns to Alere

   Defendant Alere Health, LLC ("Alere") provides condition management, case management, and wellbeing and wellness services to insurers, employers, and health care

-1-

payers. Alere's Statement of Uncontroverted Facts and Conclusions of Law ("SUF") (Dkt. 33-2) No. 2. Plaintiff Dyan Billal ("Billal") started working for Alere in 2008 as a Triage Enrollment Nurse ("TEN"). SUF Nos. 3, 11; Billal Decl. (Dkt. 38-1) ¶ 3. In that position, Billal worked from home contacting and evaluating patients for case management services over the telephone. SUF No. 3; Billal Decl. ¶ 3. Billal's first supervisor, Barbara Goodridge, testified that "after her first year, [Billal] was one of the highest referral producing nurses on my team" of twelve nurses. Plaintiff's Additional Disputed Material Facts ("PAF") (Dkt. 59) No. 143; Goodridge Dep. 21:9-18, Dec. 15, 2014.

Billal has had chronic asthma for many years. PAF No. 169; Billal Decl. ¶ 10. Billal stated that her asthma "can flare up and become so severe that [she is] unable to talk and therefore unable to work." PAF No. 170; Billal Decl. ¶ 10. In 2010, Billal took a leave of absence for approximately three to five weeks for an asthma exacerbation. SUF No. 12. When Billal took leave in 2010, she did not suffer any negative consequences and nothing negative was said to her about taking the leave. SUF No. 13.

In September 2010, Billal left Alere for a higher-paying job. Before Billal left, Alere offered her a raise in an effort to keep her with the company. SUF Nos. 15, 16; Billal Decl. ¶ 5.

In late 2011, Billal returned to Alere as a TEN after being recruited by Goodridge. SUF No. 18; PAF No. 148. Billal consistently met her productivity goals and Goodridge testified that, after her rehire, Billal was consistently in the top three in the daily productivity reports. PAF Nos. 150, 160. In her 2012 annual review, the last one she received at Alere, Billal's referral rate of 4.24 per day was characterized as "Exceptional performance." PAF No. 166.

## 2. Billal Takes Leave because of her Chronic Asthma

In the spring of 2013, Billal's asthma began to flare up and she took intermittent leave under the California Family Rights Act ("CFRA") and Family and Medical Leave Act ("FMLA") beginning April 1, 2013. SUF Nos. 21-23; PAF No. 171. The parties do not state how much leave Billal took at that time.

In August 2013, Billal became very sick with asthma and went on full-term CFRA/FMLA leave. SUF No. 24. Billal was originally scheduled to return to work on

September 28, 2013; however she became sick again with asthma and from complications with her medication. SUF No. 25. Billal testified that she was satisfied with the process of her leave of absence beginning in August and the benefits she received. SUF No. 28.

At the time Billal took CFRA/FMLA leave beginning in August 2013, her immediate supervisor was Barbara Dohanyos, who reported to Caroline Deguzeman, manager of the TEN group. SUF Nos. 4, 5. Deguzeman reported to Theresa McKelvey, who served as the director of the TEN team and who, in turn, reported to Susan Garcia, Alere's Vice President of Case Management and Triage. SUF Nos. 6, 7. Garcia managed all enrollment teams for Alere, which included approximately 225 people nationwide, including approximately 35 to 38 TENs. SUF Nos. 7, 8.

On August 14, 2013, the benefits department at Alere sent an email to Dohanyos with the subject line, "Dyan Billal – Leave Request." Stillwell Decl. Ex. 2. Dohanyos forwarded that email to Deguzeman, who sent it to McKelvey. *Id.* McKelvey forwarded the email to Garcia and stated, "Does it ever end . . . . ¶ We have another going out on [short-term disability] – severe asthma." *Id.* (ellipsis in original). Garcia then forwarded the email chain to Richard Ventimiglia, Alere's Senior Vice President of Human Resources. *Id.* In her email to Ventimiglia, Garcia stated:

> Even more reason to get me a PT req for the 2 who are reducing hours…here is a FT high performer going out on STD and unlike Christine Storey, Idont [sic] have staff to cover for STD/FMLA…I have enough staff to hit the daily targets with each FTE doing 3 referrals per day…do I sound bitter today…well I am, b/c on the weekly CM scrumm I constantly hear how they missed opens b/c of FMLA/STD but I don't get to use that excuse.

*Id.*

The parties dispute the exact date Billal exhausted her CFRA/FMLA leave. Alere offered a declaration from Ventimiglia stating that Billal's CFRA/FMLA leave was exhausted on October 28, 2013. Ventimiglia Decl. (Dkt. 33-4) ¶ 3. However, no evidence was submitted that, at the time, Billal was told her leave would be exhausted on that date. Billal offered evidence—an email dated September 23, 2013, between an Alere benefits employee and an

FMLA consultant—that Billal's CFRA/FMLA leave was not exhausted until sometime during the week beginning November 4, 2013. Stillwell Decl. Ex. 11.[1] Regardless of when her CFRA/FMLA leave was exhausted, Alere approved Billal's leave through November 3, 2013, and Billal was scheduled to return to work on Monday November 4, 2013. SUF No. 27; PAF No. 179. About one week before her scheduled return, Billal spoke with her supervisor Dohanyos on the telephone about her return. PAF No. 180.

### 3. Alere Plans and Implements Reduction in Force after Losing Business with Several Clients

In September 2013—while Billal was on leave—Alere determined that it needed to reduce its operating expenses after three of its largest and longtime clients, Optum, Cigna, and BCBS-Alabama, as well as other clients, notified Alere that they were bringing some or all of their services in-house. SUF No. 40. Ventimiglia stated in his declaration that, because of the impact of lost clients, "Alere made a business decision that it would need to lay off over one hundred employees." Ventimiglia Decl. ¶ 4.

In September 2013, Garret Hale, Alere's Senior Vice President of Operations, informed Garcia about the layoff decision. PAF No. 190. In previous reductions in force at Alere, Garcia never had to lay off anyone from the enrollment teams because they were considered revenue-producing positions, and, in the past, there had always been enough new business to cover any lost business. SUF No. 47. Hale initially told Garcia that she had to lay off employees in the obstetrics team she manages, but no one else. PAF No. 190. However, at the last minute, Hale told Garcia that she must lay off one TEN. SUF No. 54; PAF No. 191.

Around that time, another Alere client, Blue Shield of California ("Blue Shield"), informed Alere that it intended to reduce patient numbers by approximately sixty percent. Garcia Decl. ¶¶ 3, 5. Billal was one of approximately six to eight TENs who worked on the Blue Shield team. SUF No. 10; Garcia Dep. 49:8-11, Dec. 11, 2014; Billal Decl. ¶ 9. Although Garcia initially calculated that she might need to lay off about half of the TENs on the Blue

---

[1] The Court overrules Alere's evidentiary objections to Exhibit 11 of the Stillwell Declaration. The Court declines to rule on Alere's remaining evidentiary objections because doing so would not affect the outcome of this order.

Shield team to offset the decline in business from Blue Shield, she resisted laying off anyone because it was a revenue-producing team. SUF No. 59. However, Hale told Garcia that she had to lay off at least one TEN because the operations budget was still over the necessary budget target. SUF No. 60.

### 4.   Billal Is Laid Off

On November 1, 2013, Garcia and McKelvey called Billal on the phone to tell her that she was being laid off. PAF No. 230. When she received the call, Billal was walking to her doctor's office to obtain her return-to-work authorization. PAF No. 235. Upon being told that she was being laid off, Billal became very upset and hung up the phone. PAF No. 243; Billal Dep. 48:21-50:4, Nov. 6, 2014. After she hung up the phone, Billal went into the her doctor's office crying and still very upset and her blood pressure was extremely high. PAF No. 244; Billal Dep. 50:14-17. Later, Billal received a call from Nicole Trampe in Alere's human resources department to discuss information related to Billal's severance. PAF No. 245; Billal Dep. 55:1-56:3. When Billal asked Trampe why she was laid off, Trampe said she did not know and that the explanation "would have to come from [Garcia]." PAF No. 247; Billal Dep. 56:11-17. Billal told Trampe that she would like to be given the explanation from Garcia.

After Billal returned home from her doctor's office, she received another call from Garcia and McKelvey. PAF No. 248; Billal Dep. 56:17-22. Billal testified that, in that conversation, Garcia stated she did not have to tell Billal why she was let go, but Garcia did state that it was not about Billal's performance and that it was a financial decision. Billal Dep. 56: 25-57:7. Garcia testified that she told Billal that "it was a thorough process and that it had been a difficult decision." PAF No. 249.

### B.  Procedural Background

In her Complaint, Billal asserts seven claims for relief: (1) disability discrimination in violation of California's Fair Employment and Housing Act ("FEHA"); (2) age discrimination in violation of FEHA; (3) interference with CFRA rights; (4) retaliation; (5) failure to reinstate in violation of the CFRA; (6) wrongful termination in violation of public policy; and (7) intentional infliction of emotional distress. *See generally* Compl.

On January 14, 2015, Alere filed the Motion for Summary Judgment. Dkt. 33. Before Billal's opposition was due, the parties stipulated to dismissal of Billal's claim for age discrimination. Dkt. 36, 37. On February 5, Billal filed her opposition. Dkt. 38. On February 12, Alere filed its reply brief, as well as objections to evidence offered by Billal. Dkt. 41. That same day, Billal also filed evidentiary objections. Dkt. 40.

On February 17, 2015, the case was reassigned to the Honorable David O. Carter. Dkt. 42. That same day, the Court ordered Billal to file a new statement of genuine disputes of material fact. Dkt. 44. Billal filed her new statement on February 24. Dkt. 58. Alere filed a responding statement on March 16. Dkt. 59.

## II.   LEGAL STANDARD

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is to be granted cautiously, with due respect for a party's right to have its factually grounded claims and defenses tried to a jury. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The court must view the facts and draw inferences in the manner most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1992); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial, but it need not disprove the other party's case. *Celotex*, 477 U.S. at 323. When the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out that the non-moving party has failed to present any genuine issue of material fact as to an essential element of its case. *See Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990).

Once the moving party meets its burden, the burden shifts to the opposing party to set out specific material facts showing a genuine issue for trial. *See Liberty Lobby*, 477 U.S. at 248-49. A "material fact" is one which "might affect the outcome of the suit under the governing law . . . ." *Id.* at 248. A party cannot create a genuine issue of material fact simply by making assertions in its legal papers. *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde &*

*Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir. 1982). Rather, there must be specific, admissible evidence identifying the basis for the dispute. *Id.* The court need not "comb the record" looking for other evidence; it is only required to consider evidence set forth in the moving and opposing papers and the portions of the record cited therein. Fed. R. Civ. P. 56(c)(3); *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001). The Supreme Court has held that "[t]he mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for [the opposing party]." *Liberty Lobby*, 477 U.S. at 252.

### III.    ANALYSIS

Alere contends that it is entitled to summary judgment as to each of Billal's claims.

### A. Billal's First Claim for Disability Discrimination under the FEHA

The FEHA prohibits employment discrimination on the basis of "physical disability, mental disability, [and] medical condition." Cal. Gov't Code § 12940(a). In order to prevail on her claim for disability discrimination, Billal "must show 'that [she] suffered from a disability, was otherwise qualified to do [her] job, and was subjected to adverse employment action because of [her] disability.'" *Malais v. Los Angeles City Fire Dep't*, 150 Cal. App. 4th 350, 356 (2007).

Billal's disability discrimination claim is subject to the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 354 (2000) ("California has adopted the three-stage burden-shifting test established by the United States Supreme Court for trying claims of discrimination, including age discrimination, based on a theory of disparate treatment."). "Under this analysis, [Billal] must first establish a prima facie case of employment discrimination." *Hawn v. Executive Jet Mgmt., Inc.*, 615 F.3d 1151, 1155 (9th Cir. 2010). To establish a prima facie case, Billal must provide evidence that: (1) she was a member of a protected class; (2) she was performing competently in the position she held; (3) she suffered an adverse employment action; and (4) some other circumstances suggest discriminatory motive. *Guz*, 24 Cal. 4th at 355. If Billal establishes a prima facie case, the burden of production shifts to Alere to articulate a "legitimate, nondiscriminatory reason for the challenged action." *Hawn*, 615 F.3d at 1155 (internal quotation marks omitted). Once Alere

meets this burden, Billal must demonstrate either that Alere's showing was insufficient or that there was a genuine dispute of fact material to Alere's showing. *Lucent Technologies, Inc.*, 642 F.3d at 746. Billal may satisfy her burden by "produc[ing] substantial responsive evidence that the employer's showing was untrue or pretextual." *Id.* (alteration in original).

Alere argues that Billal cannot make a prima facie case of discrimination because she cannot show circumstances suggesting discriminatory motive. Alere's Memorandum of Points and Authorities ("Mem.") (Dkt. 33-1) at 14:18-26. The Court disagrees.

The timing of Billal's termination supports a prima facie case. Billal was terminated while on disability leave, just before her scheduled return to work. Additionally, Billal submitted Garcia's August 14, 2013 email, in which Garcia expressed feeling "bitter" apparently about not having adequate staffing help because members of her team were out on disability leave. The email identified the medical condition for which Billal was taking leave (i.e., severe asthma). Although the Court agrees with Alere that Garcia's email does not suggest animus directed at Billal, the email may support a conclusion that Garcia generally viewed employees taking disability leave negatively. Billal's evidence, though not conclusive, is sufficient to make a prima facie case.

Alere's primary argument for summary judgment is that it had a legitimate, nondiscriminatory reason for terminating Billal's employment. Specifically, Alere submitted evidence—undisputed by Billal—"that it suffered a decline in business after losing major clients and having existing clients reduce their business with Alere, including Blue Shield of California, the client that Plaintiff Billal's group of six TENs worked on." Reply at 3:11-14. Alere's argument misses the mark.

In a case involving a reduction in force, "[i]t is not enough for an employer to simply state that it decided to lay off a group of workers." *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1094 (9th Cir. 2008). Rather, "[t]o meet its burden, the employer must explain why it selected the plaintiff in particular for the layoff." *Id.* (holding defendant employer failed to provide a legitimate reason for terminating plaintiff where it simply articulated that it laid off plaintiff as well as sixteen other employees for economic reasons); *see also Diaz v. Eagle Produce Ltd.*

1   *P'ship*, 521 F.3d 1201, 1211 (9th Cir. 2008) ("To suffice under *McDonnell Douglas*, an
2   employer's explanation must explain why the plaintiff 'in particular' was laid off.").

3      Like the employers in both *Davis* and *Diaz*, Alere has failed to offer a legitimate,
4   nondiscriminatory reason for laying off Billal in particular. Crucial to the Court's conclusion is
5   Garcia's testimony that Billal was one of six or seven TENs working on the Blue Shield
6   account and that Billal was, to the best of Garcia's knowledge, the only TEN out on disability
7   leave at the time of the reduction in force. Garcia Dep. 49:8-11, 97:1-8, Dec. 12, 2014. When
8   asked why she picked Billal for the layoff, Garcia stated "it was a random selection." *Id.* at
9   51:17-52:8. At another point in her deposition, Garcia testified that she did not remember why
10  she picked Garcia. *Id.* at 54:16-25, 59:22-60:5. Alere's "[w]orkforce reduction explains why
11  [Alere] laid off a group of its workers, but it does not explain why [Billal] was chosen to be part
12  of that group. Because no other explanation was given with respect to [Billal], [Alere] failed to
13  satisfy its burden at stage two on h[er] claim, and summary judgment [is] inappropriate." *See*
14  *Diaz*, 521 F.3d at 1212.

15     The cases Alere relies upon are inapposite. In *Clutterham v. Coachmen Indus., Inc.*, 169
16  Cal. App. 3d 1223, 1227 (1985), the issue was whether termination was for good cause in
17  accordance with the terms of an employment agreement. The case did not involve the FEHA.
18  *Id.*

19     The procedural posture in *Muzquiz v. City of Emeryville*, 79 Cal. App. 4th 1106, 1120
20  (2000), renders that case unhelpful here. Because *Muzquiz* was an appeal from judgment
21  rendered for the defendant employer after a jury verdict, the issue was simply "whether there
22  was substantial evidence to support the trial court's decision" on the issue of the plaintiff's
23  discrimination claim. *Id.* at 1120. *Muzquiz* is also factually distinguishable. In addition to
24  evidence that the plaintiff's position was eliminated because of a budgetary shortfall, the
25  defendant offered evidence of the plaintiff's "poor job performance, negative attitude, and
26  inability or unwillingness to work with others." *Id.* at 1120-21. Alere has offered no similar
27  evidence. Finally, *Muzquiz* has been called into doubt on the issue of an employer's articulated
28  legitimate reason for the employment decision. *See Mamou v. Trendwest Resorts, Inc.*, 165 Cal.

App. 4th 686, 715 (2008) (stating cases, including *Muzquiz*, "have muddied the waters by stating that once the employer cites a reason, the 'ultimate issue' is whether the cited reason was a 'pretext'").

*Martin v. Lockheed Missiles & Space Co.*, 29 Cal. App. 4th 1718 (1994), is also distinguishable. In that case, the defendant "demonstrated, without internal inconsistency, that [it] had implemented the reduction in force which led to [the plaintiff's] layoff in a rational and methodical manner." *Id.* at 1732. The defendant's evidence showed that it had ranked the employees considered for layoff based on certain factors, including performance and seniority, and the plaintiff's score was substantially lower than another employee not selected for layoff. *Id.* at 1731-32. In contrast to *Martin*, here, Alere's implementation of its reduction in force only explains why a reduction in force was necessary and why Alere decided to lay off one of the TENs working on the Blue Shield account. Alere's explanation simply fails to account for the decision to select Billal specifically for layoff. In its reply, Alere emphasizes that Billal was an at-will employee and thus could be terminated for no reason at all. However, Alere offered no authority that an employment relationship being "at will" is a satisfactory substitute for a defendant to meet its burden under the second step of the *McDonnell Douglas* analysis in a discrimination case.

Alere's argument that discrimination laws do not provide employees with any greater protection against a company-wide workforce reduction than they would otherwise possess is also unavailing. *See* Mem. at 16:23-26; *Tomlinson v. Qualcomm, Inc.*, 97 Cal. App. 4th 934, 940 (2002). *Tomlinson* stands for the unremarkable proposition that persons on CFRA leave are not categorically immunized from layoff during the leave. *Id.* The case is inapplicable here because a genuine dispute of material fact remains as to whether Billal was selected for layoff because of her disability (or because she had taken CFRA leave).

Alere's Motion for Summary Judgment is DENIED as to Billal's first claim for disability discrimination under the FEHA.

**B. Billal's Third and Fourth Claims under the CFRA**

The CFRA makes it unlawful for an employer with 50 or more employees to refuse an employee's request for up to 12 weeks of family care and medical leave in a year. Cal. Gov't Code § 12945.2(a). Under the CFRA, it is unlawful "for an employer to refuse to hire, or to discharge, fine, suspend, expel, or discriminate against, any individual because of . . . [a]n individual's exercise of the right to family care and medical leave provided by" the CFRA. Cal. Gov't Code § 12945.2(*l*)(1). It is also unlawful "for an employer to interfere with, restrain, or deny the exercise of, or the attempt to exercise, any right provided under" the CFRA. Cal. Gov't Code § 12945.2(t). The provisions of the CFRA mirror its federal counterpart, the FMLA, 29 U.S.C. §§ 2601-2654, and "courts use language from the FMLA and the CFRA interchangeably." *Richey v. AutoNation, Inc.*, 60 Cal. 4th 909, 919 (2015).

There is some confusion in case law about the difference between a claim for "interference" under the CFRA/FMLA and a claim for "retaliation" or "discrimination" under the CFRA/FMLA. In *Liu v. Amway Corp.*, 347 F.3d 1125, 1133 (9th Cir. 2003), the Ninth Circuit relied on regulations promulgated by the U.S. Department of Labor to conclude that a claim that an employer used the taking of FMLA leave as a negative factor in an employment action is an "interference" claim. *See id.* at 1136 ("[W]here an employee is subjected to 'negative consequences . . . simply because he has used FMLA leave,' the employer has *interfered* with the employee's FMLA rights . . . ." (emphasis added)). The court distinguished such claims from "discrimination and retaliation" claims "where an employee is punished for *opposing* unlawful practices by the employer." *Id.*

In contrast, the California Supreme Court recently characterized, in dicta, the difference between interference claims and discrimination or retaliation claims as follows: "'Interference' claims prevent employers from wrongly interfering with employees' approved leaves of absence, and 'retaliation' or 'discrimination' claims prevent employers from terminating or otherwise taking action against employees because they exercise those rights." *Richey*, 60 Cal. 4th at 920 (citing *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 960 (10th Cir. 2002) and 29 U.S.C. § 2615(a)(1), (a)(2)).

The confusion between interference and retaliation claims is bolstered by the regulations adopted by California's Fair Employment and Housing Commission, which define "interference" as including discrimination and retaliation:

> CFRA's prohibition against "interference" prohibits an employer from discriminating or retaliating against an employee or prospective employee for having exercised or attempted to exercise CFRA rights or giving information or testimony regarding his or her CFRA leave, or another person's CFRA leave, in any inquiry or proceeding related to any right guaranteed under this article. For example, if an employee on leave without pay would otherwise be entitled to full benefits (other than health benefits), the same benefits would be required to be provided to an employee on unpaid CFRA leave. By the same token, employers cannot use the taking of CFRA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions; nor can CFRA leave be counted against an employee under an employer's attendance policies.

Cal. Code Regs. tit. 2, § 11904. This regulation mirrors its federal counterpart. *See* 29 C.F.R. § 825.220.

Characterizing a plaintiff's claim under the CFRA as either interference or retaliation matters because different standards are applicable to the two different claims. In *Bachelder v. American West Airlines*, 259 F.3d 1112, 1124-25 (9th Cir. 2001), the Ninth Circuit held that the *McDonnell Douglas* burden-shifting analysis does not apply to interference claims. *See also Liu*, 347 F.3d at 1136; *Faust v. California Portland Cement Co.*, 150 Cal. App. 4th 864, 879 (2007) ("An interference claim under the FMLA (and thus the CFRA) does not involve the burden-shifting analysis articulated [in *McDonnell Douglas*].") Rather, the court held, a terminated employee asserting an interference claim "need only prove by a preponderance of the evidence that her taking of FMLA-protected leave constituted a negative factor in the decision to terminate her." *Bachelder*, 259 F.3d at 1125. However, California courts apply the *McDonnell Douglas* analysis to CFRA retaliation claims. *See Faust*, 150 Cal. App. 4th at 885.

Billal's third claim is styled as "interference with CFRA rights" and her fourth claim is styled as "violation of CFRA rights—retaliation." Compl. at 5-6. A close look at these two claims reveals that they are factually the same. Under both claims, Billal alleges she was unlawfully terminated because she took CFRA leave. However, because the interference and

retaliation claims have different elements and legal standards, the Court addresses them separately.

### 1.    Interference

To prevail on her "interference" claim, Billal must show "that her taking of [CFRA]-protected leave constituted a negative factor in the decision to terminate her." *Liu*, 347 F.3d at 1136 (internal quotation marks omitted); *see also* Cal. Code Regs. tit. 2, § 11904; 29 C.F.R. § 825.220. "She can prove this claim, as one might any ordinary statutory claim, by using either direct or circumstantial evidence, or both." *Bachelder*, 259 F.3d at 1125. As discussed above, the *McDonnell Douglas* burden-shifting analysis does not apply. *See id.* at 1124-25. Rather, in deciding Alere's Motion for Summary Judgment, the Court must simply determine "whether there is a triable issue of material fact as to whether the [CFRA] leave taken by [Billal] was impermissibly considered as a factor in her termination." *See Liu*, 347 F.3d at 1136.

Here, the Court finds a triable issue of material fact. Although it is not clear from the record whether Garcia knew that Billal was the only TEN from the Blue Shield team out on CRLA leave at the time of the layoff, Garcia being in a position overseeing all TENs supports such an inference. Garcia's August 14, 2013 email to Ventimiglia, expressing her concern of the performance pressures she faced by inadequate staffing due to team members—including Billal—being out on leave, could reasonably be construed as evidencing a negative attitude toward employees who go on leave. Additionally, although Billal's interference claim is not subject to *McDonnell Douglas* analysis, Garcia's explanation of why Billal was selected for layoff is relevant to determining whether the taking of CFRA leave was impermissibly considered as a factor. As discussed above, Garcia's explanation that Billal was selected not based on performance but, rather, because of the reduction of the Blue Shield account only explains the need for the reduction in force. It does not explain the separate question of why Billal was chosen among the TENs working on the Blue Shield account. The void left from Garcia's characterization of that selection as "random," combined with Garcia's knowledge of Billal's leave and her August 14, 2013 email, leaves sufficient room for a reasonable jury to

conclude that Garcia impermissibly considered Billal's taking of leave as a factor in her termination.

Alere's Motion for Summary Judgment is DENIED as to Billal's third claim for interference under the CFRA.

### 2.      Retaliation

Under the CFRA, it is unlawful "for an employer to . . . discharge . . . or discriminate against, any individual because of . . . . [a]n individual's exercise of the right to family care and medical leave provided by" the CFRA. Cal. Gov't Code § 12945.2(l); *see also* Cal. Code Regs. tit. 2, § 11904."A plaintiff can establish a prima facie case of retaliation in violation of the CFRA by showing the following: (1) the defendant was a covered employer; (2) the plaintiff was eligible for CFRA leave; (3) the plaintiff exercised his or her right to take a qualifying leave; and (4) the plaintiff suffered an adverse employment action *because he or she exercised the right to take CFRA leave*."[2] *Rogers v. Cnty. of Los Angeles*, 198 Cal. App. 4th 480, 491 (2011).

The facts related to Billal's fourth claim for retaliation in violation of the CFRA are identical to those related to her first claim (disability discrimination). And both claims are subject to the same *McDonnell Douglas* burden-shifting. *See Faust*, 150 Cal. App. 4th at 885.Therefore, for the reasons discussed in Part III.A. above, Billal has met her burden of making a prima facie case of retaliation or discrimination in violation of the CFRA and Alere has failed to articulate a legitimate, nonretaliatory/nondiscriminatory reason for selecting Billal in particular for layoff.

Alere's Motion for Summary Judgment is DENIED as to Billal's fourth claim for retaliation under the CFRA.

---

[2] In 2013, the California Supreme Court held that a plaintiff alleging unlawful discrimination under the FEHA must show that discrimination was a "substantial motivating factor" for an employment decision. *Harris v. City of Santa Monica*, 56 Cal. 4th 203, 232 (2013). California courts have not addressed whether this standard also applies to *retaliation* claims under the CFRA. However, after *Harris*, the Judicial Council Civil Jury Instruction for CFRA retaliation claims was changed to require that discrimination be a "substantial motivating reason," rather than a "motivating reason." Judicial Council Of California Civil Jury Instruction (CACI) 2620.

### C. Billal's Fifth Claim for Failure to Reinstate

By her fifth claim, Billal alleges that Alere violated her right to reinstatement under the CFRA, which provides, with certain exceptions, that an employee taking CFRA leave be returned to "the same or a comparable position upon the termination of the leave." Cal. Gov't Code § 12945.2(a). The promise for reinstatement is not absolute. The FEHC's corresponding regulation "clarif[ies] that the guarantee of reinstatement to the same or comparable position does not preclude an employer from terminating the employee's employment as part of a work force reduction." *Tomlinson*, 97 Cal. App. 4th at 940 (citing Cal. Code Regs., tit. 2, § 7297.2(c)).

Alere cites *Tomlinson* and relies on its contention that it had a legitimate, nondiscriminatory reason for laying off Billal. However, as discussed above, Alere's stated reason fails to explain why Billal in particular was chosen for the layoff.

Alere's Motion for Summary Judgment is DENIED as to Billal's fifth claim for failure to reinstate under the CFRA.

### D. Billal's Sixth Claim for Wrongful Termination

Billal's sixth claim is for wrongful termination in violation of public policy—commonly referred to as a *Tameny* claim. *See Tameny v. Atlantic Richfield Co.*, 27 Cal. 3d 167 (1980). The elements of a *Tameny* claim are "(1) an employer-employee relationship, (2) the employer terminated the plaintiff's employment, (3) the termination was substantially motivated by a violation of public policy, and (4) the discharge caused the plaintiff harm." *Yau v. Santa Margarita Ford, Inc.*, 229 Cal. App. 4th 144, 154 (2014). The public policy alleged to be violated must be "(1) fundamental, (2) beneficial for the public, and (3) embodied in a statute or constitutional provision." *Turner v. Anheuser-Busch, Inc.*, 7 Cal. 4th 1238, 1256 (1994) (footnotes omitted). The causation element requires a showing of a nexus between protected conduct by the employee and the termination. *See id.* at 1258.

Billal bases her *Tameny* claim on the public policies embodied in the FEHA and the CFRA, including the public policies that prohibit discrimination on the basis of disability and protect employees against retaliation for exercising their right to take protected disability or

medical leave. Compl. ¶ 41. Courts have held that a *Tameny* claim may be based on the public policies within the FEHA and the CFRA. *See City of Moorpark v. Superior Court*, 18 Cal. 4th 1143, 1161 (1998) (disability discrimination under the FEHA); *Nelson v. United Technologies*, 74 Cal. App. 4th 597, 612 (1999) (CFRA).

Alere again relies on its argument that it has articulated a legitimate, nondiscriminatory reason for laying off Billal. However, "[b]ecause [Billal] has viable claims for violation of the CFRA, it necessarily follows that a triable issue exists with respect to the [sixth] cause of action for wrongful termination in violation of public policy." *Faust*, 150 Cal. App. 4th at 886.

Alere's Motion for Summary Judgment is DENIED as to Billal's sixth claim for wrongful termination in violation of public policy.

### E. Billal's Seventh Claim for Intentional Infliction of Emotional Distress

Billal asserts a claim for intentional infliction of emotion distress. The elements of a claim for intentional infliction of emotional distress are: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009) (internal quotation marks omitted). "[C]onduct is 'outrageous' when it is so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Id.* at 1050-51 (internal quotation marks omitted).

Alere argues that there is no evidence of conduct by Alere about Billal's termination or animus related to her protected class beyond the simple notification of her layoff, which was done by phone. Memo. at 22:9-11; Reply at 16:26-28. Alere also argues that Billal's emotional distress claim is "likely" barred by the Workers' Compensation Act. The Court disagrees.

Claims against an employer for intentional infliction of emotional distress are barred by California's Worker's Compensation Act "when the misconduct attributed to the employer is actions which are a normal part of the employment relationship, such as demotions, promotions, criticism of work practices, and frictions in negotiations as to grievances." *Cole v. Fair Oaks Fire Prot. Dist.*, 43 Cal. 3d 148, 160 (1987). However, "[a] claim for distress arising

-16-

out of employment is 'not barred where the distress is engendered by an employer's illegal discrimination practices.'" *Nazir v. United Airlines, Inc.*, 178 Cal. App. 4th 243, 288 (2009) (quoting *Accardi v. Superior Court*, 17 Cal. App. 4th 341, 352 (1993)); *see also Cabesuela v. Browning-Ferris Indus. of California, Inc.*, 68 Cal. App. 4th 101, 112 (1998) ("In light of our conclusion that plaintiff has stated a cause of action for wrongful termination in violation of public policy, we hold that plaintiff has also stated a cause of action for intentional infliction of emotional distress.").

At the hearing on the Motion for Summary Judgment, Alere's counsel sought to distinguish *Nazir* and *Cabesuela* on the basis that they involved claims of harassment. However, neither the court in *Nazir* nor *Cabesuela* limited its holding in the way Alere argues. In *Cabesuela*, the court cited the California Supreme Court's holding in *Gantt v. Sentry Insurance*, 1 Cal. 4th 1083 (1992), "that when an employer's decision to discharge an employee results from an animus that violates the fundamental policy, such misconduct cannot be considered a normal part of the employment relationship." *Cabesuela*, 68 Cal. App. 4th at 112-13. In finding that the trial court erred in sustaining a demurrer to the plaintiff's emotional distress claim, the court relied solely on its "conclusion that [the] plaintiff has stated a cause of action for wrongful termination in violation of public policy." *Id.* at 112.

Because triable issues remain as to Billal's first, third, fourth, fifth, and sixth claims, summary judgment must be denied as to Billal's claim for intentional infliction of emotional distress. *See Nazir*, 178 Cal. App. 4th at 288 ("[O]ur conclusions as to the discrimination and harassment claims compel reversal of the summary adjudication of [the intentional infliction of emotional distress] cause of action."). Alere failed to provide any authority to the contrary.

Alere's Motion for Summary Judgment is DENIED as to Billal's seventh claim for intentional infliction of emotional distress.

### F. Punitive Damages

Alere moves for summary judgment that Billal cannot sustain her prayer for punitive damages.

California Civil Code § 3294, subdivision (a), authorizes punitive damages where oppression, fraud, or malice is shown by clear and convincing evidence. The California Supreme Court has expressly held that punitive damages may be awarded in the FEHA cases. *Commodore Home Sys., Inc. v. Superior Court*, 32 Cal. 3d 211, 215 (1982). However, an employer cannot be found liable for punitive damages based the acts of its employee "unless the employer had advance knowledge of the unfitness of the employee and employed him or her with a conscious disregard of the rights or safety of others or authorized or ratified the wrongful conduct for which the damages are awarded or was personally guilty of oppression, fraud, or malice." Cal. Civ. Code § 3294(b). Additionally, "[w]ith respect to a corporate employer, the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation." *Id.*

"Managing agents" are only "those employees who exercise substantial independent authority and judgment over decisions that ultimately determine corporate policy." *White v. Ultramar, Inc.*, 21 Cal. 4th 563, 573 (1999). Determining whether an employee is a managing agent is "a question of fact for decision on a case-by-case basis." *Id.* at 567. "[R]atification generally occurs where, under the particular circumstances, the employer demonstrates an intent to adopt or approve oppressive, fraudulent, or malicious behavior by an employee in the performance of his job duties." *Coll. Hosp. Inc. v. Superior Court*, 8 Cal. 4th 704, 726 (1994). "Corporate ratification in the punitive damages context requires actual knowledge of the conduct and its outrageous nature." *Id.*

Alere argues that Billal's prayer for punitive damages fails because (1) she does not have clear and convincing evidence of oppression, fraud, or malice and (2) even if she did, the wrongful action taken against Billal was not made or ratified by an officer, director, or managing agent of Alere.

The Court rejects Alere's first argument. "[I]n general, intentional discrimination is enough to establish punitive damages liability." *Passantino v. Johnson & Johnson Consumer Products, Inc.*, 212 F.3d 493, 515 (9th Cir. 2000). The exception to this rule is "when the

employer is aware of the specific discriminatory conduct at issue, but nonetheless reasonably believes that conduct is lawful." *Id.* As discussed above, the evidence is sufficient for a jury to conclude that Billal was terminated because of her disability or because she had taken CFRA/FMLA leave. The same evidence supports a reasonable inference that the wrongful conduct was intentional and undertaken without a reasonable belief that it is lawful.

As for Alere's second argument, assuming Garcia's conduct is found to be oppressive, fraudulent, or malicious, Alere may be found liable for punitive damages if (1) Garcia was an officer, director, or managing agent or (2) if another individual at Alere who was an officer, director, or managing agent ratified Garcia's conduct. The flaw with Alere's argument is that it has failed to offer sufficient evidence for the Court to determine whether Garcia was an officer, director, or managing agent. The only facts cited by Alere in its brief are that: Garcia's selections of persons for layoff had to be approved by the company's human resources department; and final authority to layoff persons did not vest with Garcia. *See* SUF No. 130.[3]

In contrast, Billal cited the following evidence: (1) Garcia was a Vice President over the triage and enrollment department; (2) Garcia was responsible for managing 225 employees; (3) two directors, six managers, and six supervisors reported to Garcia; (4) Garcia had the ultimate authority to fire employees and was responsible for the profit and loss of her department. *See* Garcia Dep. 20:1-18, 21:20-23, 22:7-19. Billal's evidence is consistent with, but does not compel, a conclusion that Garcia was a managing agent. However, on the record provided by the parties, the Court cannot state that Garcia was *not* a managing agent under the standard set forth in *Ultramar*. *See Ultramar*, 21 Cal. 4th at 577 ("[A] plaintiff seeking punitive damages would have to show that the employee exercised substantial discretionary authority over significant aspects of a corporation's business.").

Because Alere has failed to establish that, based on the undisputed facts, Garcia was not a managing agent, the Court need not address whether the alleged wrongful conduct by Garcia was ratified by someone else at Alere who was an officer, director, or managing agent.

---

[3] Notably, in *Ultramar*, the California Supreme Court rejected the court of appeal's narrow approach of determining that a supervisory employee was a managing agent solely from the fact that the supervisor had the ability to hire and fire employees. *Ultramar*, 21 Cal. 4th at 567.

Therefore, Alere's Motion for Summary Judgment is DENIED as to Billal's entitlement to punitive damages.

**IV.    DISPOSITION**

For the reasons discussed above, Alere's Motion for Summary Judgment is DENIED.

DATED:  April 9, 2015

_David O. Carter_

DAVID O. CARTER
UNITED STATES DISTRICT JUDGE